UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JANET POWELL, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 09-5576 |
| v. | : | MEMORANDUM OPINION & ORDER |
| HADDON TOWNSHIP, MAYOR RANDALL TEAGUE, officially and individually, COMMISSIONER JOHN FOLEY, officially, COMMISSIONER PAUL DOUGHERTY, officially, | : : | |
| Defendants, | : | |

This matter is before the Court on a motion for summary judgment filed by Defendants. Oral argument on the motion was heard on February 29, 2012, and the record of that proceeding is incorporated here. For the reasons placed on the record that day, and those articulated below, the motion will be granted.

<u>Background</u>

Plaintiff Janet Powell filed the Complaint in this matter on October 30, 2009 alleging age discrimination in violation of the Age Discrimination in Employment Act and the New Jersey Law Against Discrimination, discrimination based on political affiliation in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1, and civil conspiracy by Plaintiff's former employer, Haddon Township, and three Township officials. At oral argument, Plaintiff's attorney relinquished the conspiracy claim.[1]

---

[1] Additionally, in briefing the motion, Plaintiff clarified that she has asserted an ADEA claim against only Haddon Township, and she has not asserted a NJLAD claim of aiding and abetting against anyone other than Teague.

Plaintiff was employed at the Haddon Township Public Works Department from October 1990 until December 31, 2007. (Def. Br., Ex. A.) She started as a part-time clerk, and was promoted to senior clerk effective July 1, 2002. (Id.) In 2005 and 2006, due to the illness of Dispatcher Al Boenning, Plaintiff performed her duties, as well as those of her ill co-worker. As a result, she received a bonus of $3,000 in 2006. (Powell Dep., p. 44.) Plaintiff's salary was approximately $34,000 per year, plus benefits.

In May of 2007, Randall Teague was elected Mayor of Haddon Township; he took office the same month. Defendants Foley and Dougherty were also elected Commissioners in May of 2007. On November 8, 2007, when Plaintiff was 59 years old, she was notified by letter that her position was to be eliminated effective December 31, 2007 as a cost saving measure. (Def. Br., Ex. B.)

On November 29, 2007, the Township posted a job opening for an office manager in the Public Works Department, to be paid $40,000 per year. Plaintiff alleges that the job responsibilities listed were essentially the same as those that she had been performing.[2] Plaintiff applied for the position, but was not interviewed. Instead, a forty-one year old woman, Barbara Prince, was hired for the office manager position. Plaintiff alleges that the woman and her husband were political supporters of the new mayor, while Plaintiff did not reside in the Township and was not politically active. Defendants acknowledge that the woman's husband was among a group of people who put up political signs for Teague, but deny any further involvement in the campaign by the couple.

---

[2]Defendants contend that Plaintiff did not perform any supervisory duties as a senior clerk, but the office manager was charged with supervisory and managerial duties.

2

On April 2, 2008, the Public Works Department hired a forty-seven year old woman, Betty Brooks, as a full-time temporary employee. (Def. Br., Ex. G, Band Aff.) Brooks was hired when another employee was on medical leave; she was the only person who applied for the job. (Id.) When the ill employee died, Brooks was hired on a permanent basis on July 1, 2008. (Id.)

Finally, Plaintiff asserts that the new office manager was paid an additional $8,000 to serve as recycling coordinator, when Plaintiff and a coworker had performed the duties of a recycling coordinator for no additional pay.

Defendants now move for summary judgment on the entirety of Plaintiff's Complaint. They argue that Plaintiff's position of senior clerk and other positions in the Township were eliminated for economic reasons.[3] They also contend that Defendants created the position of Public Works office manager to gain accountability in that department, and that position has many more responsibilities than Plaintiff performed as a senior clerk. Defendants further state that they had no knowledge of Plaintiff's political affiliation; Plaintiff and Defendants never even spoke. They also point out that Foley is a Republican, Dougherty is a Democrat, and Teague has been unaffiliated with any political party since prior to 2000.

---

[3] In 2007 and 2008, the Township laid off three other individuals, terminated one, and reduced the position of clerk from full-time to part-time. At the same time, the Township retained five employees age 59 or older, six employees ranging in age from 55 to 59, and eleven employees from age 50 to 54. (Def. Br., Ex. G, Band Aff.) The Court notes that Plaintiff moved to strike this portion of Band's Affidavit, or alternatively to expand discovery related to this portion of Band's Affidavit, as well as Teague's and Stevenson's Affidavits. Plaintiff has not identified with the requisite specificity how additional discovery would enable her to establish the existence of a genuine issue of material fact to defeat summary judgment.

Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986)); accord Fed. R. Civ. P. 56(a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c) (1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to

4

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256–57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).  In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Analysis

The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992).  Analysis of Plaintiff's claims is governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas, an employee must first

establish by a preponderance of the evidence a prima facie claim of discrimination by showing (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the employer treated more favorably those not in the protected class or, under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position. Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). The prima facie test is a flexible one which must be tailored to fit the specific context in which it is applied. Id. at 797-98.

    Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802. The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). However, "[a]n employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'" Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999).

    Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes, 32 F.3d at 763. A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more

likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of credence.  Ezold, 983 F.2d at 523.  One of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor.  Waldron v. SL Indus., Inc., 56 F.3d 491, 494-95 (3d Cir. 1995).  On the other hand, the employee cannot carry his burden by showing that the employer's decision was "wrong or mistaken."  Fuentes, 32 F.3d at 765.  Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them unworthy of credence," id. (citing Ezold, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,'" id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

     A plaintiff's subjective belief that his qualifications should have been accorded more weight is not probative of pretext.  See, e.g., Valdes v. Union City Bd. Of Ed., 186 Fed. Appx. 319, 323 (3d Cir. 2006).  An employer is entitled to evaluate which qualifications best fit its needs in selecting a candidate.  See Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (finding legitimate reasons for not selecting the more experienced candidate because it was up to the university to evaluate which qualifications best fit departmental needs).  That is, a plaintiff's disagreement with assessment criteria and belief that he or she is better qualified for the position is not sufficient to avoid summary judgment.  Langley v. Merck & Co., 186 Fed. Appx. 258, 261 (3d Cir. 2006).

Age Discrimination Claims under the ADEA and NJLAD

In order to establish a prima facie case under the ADEA, a plaintiff must prove that: (1) the plaintiff belongs to a protected class--over age 40; (2) the plaintiff was qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) the position was filled by someone sufficiently younger to permit an inference of age discrimination.  See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 331 (3d Cir. 2000); Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995). Defendants argue that Plaintiff cannot meet the fourth element of the prima facie case of age discrimination because her position of senior clerk was eliminated, and the new position of Public Works office manager incorporated supervisory, disciplinary, and other duties that Plaintiff never performed during her employment with the Township.

Even if the Court assumes that Plaintiff has put forth a prima facie case of age discrimination, Defendants have shown that Plaintiff's position was eliminated for economic reasons, which is a legitimate, nondiscriminatory ground.  In 2007 and 2008, the Defendants made efforts to consolidate and reorganize Township positions to save money.  In early 2007, each department in Haddon Township was asked to review its budget because the proposed Township budget exceeded the State-mandated cap on tax increases.  (Def. Br., Ex. R; see also Ex. X.)  In 2007 and 2008, the Township lost thousands of dollars in State aid and suffered substantial increases in health care and pension costs.  (Def. Br., Ex. E, Teague Aff.)  As a result, the Township re-negotiated union contracts, re-bid trash removal (saving $82,000), outsourced payroll, and turned over the Township's Public Assistance programs to Camden County.  (Id.)  The Township also was able to reduce legal fees by over $22,000.  (Id.)

Even after these measures, an analysis of the Township work force caused officials to conclude that layoffs were necessary for reasons of efficiency and economy. (Id.) In August 2007, the Township terminated its Court Clerk for insubordination and failure to return to work. (Id.; Babb Decl. Ex. A.) Effective December 31, 2007, the Township laid off Plaintiff and the Deputy Township Clerk; reasons given were consolidation and reorganization. (Id.) On January 1, 2008, a full-time clerk's position in the tax office was reduced to part-time for budgetary reasons. (Id.) On February 8, 2008, the position of Superintendent of Public Works was consolidated with the position of Superintendent of Water and Sewer, resulting in the elimination of the position of another employee when the Superintendent of Public Works was laid off. (Id.) On March 3, 2008, another office position, Registrar of Vital Statistics, was eliminated through a layoff for reasons of consolidation and reorganization; the work of the terminated employee was absorbed by other employees of the Township. (Id.)

Additionally, the record reflects that the Township desired accountability in the Public Works Department, as the department was "fraught with sick time abuse, theft, and other problems," and that is why the position of office manager was created. (Def. Br., Ex. E, Teague Aff.) The office manager performed supervisory and disciplinary duties, and conducted union negotiations. (Id.) Plaintiff had no experience in that regard, see Powell Dep., p. 16-19, 38-40, so the senior clerk position was not simply renamed so that Plaintiff could be replaced. See also Def. Br., Ex. I, Superintendent of Water, Sewer, & Public Works James Stevenson's Aff. ("Mrs. Prince's duties are nowhere close to the same as those performed by Plaintiff. Mrs. Prince's duties far exceed Plaintiff's duties when she was senior clerk. She also has supervisor and

9

managerial duties over employees that Plaintiff never had.  Mrs. Prince also deals with union grievances and disciplinary matters, which Plaintiff did not.").

Faced with the record evidence set forth here, Plaintiff has failed to show by a preponderance of the evidence that the Defendants' explanation is pretextual.  She argues that she was qualified for the office manager position because the job posting did not reference policy recommendations, administering employee discipline, overseeing labor contracts, or conducting union negotiations.  Nor did the job posting state that management or supervisory training or experience was required or that any particular level of education was a prerequisite.  She also argues that although her position may have been eliminated, hiring Mrs. Prince as office manager at a somewhat higher salary netted the Township no real cost savings.  These arguments, however, are not enough to overcome the evidence presented by Defendants that they implemented cost saving measures, including layoffs and restructuring, to meet the Township's budget and gain accountability in the Public Works department.

Because the Court finds no viable case of age discrimination, it need not address whether Teague may have aided or abetted the alleged discrimination under the NJLAD by eliminating Plaintiff's position and failing to interview her for the office manager job, hiring the younger Mrs. Prince instead.

<u>Claims of Discrimination based on 42 U.S.C. § 1983 and the NJ Civil Rights Act</u>

It is a violation of the First Amendment for public agencies to discharge, promote, transfer, recall or make other hiring decisions involving public employees based on party affiliation and support unless the government can show that the position involves policy making, and that party affiliation is therefore an appropriate

requirement for the position.  Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990); Branti v. Finkel, 445 U.S. 507, 514-515 (1980); Elrod v. Burns, 427 U.S. 347, 372-373 (1976).  "A citizen's right not to support a candidate is every bit as protected as his right to support one."  Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997) (citing Rutan, 497 U.S. at 67-68; Bennis v. Gable, 823 F.2d 723, 731 (3d Cir. 1987)).  See also Article I, paragraph 6 of the New Jersey Constitution.

    Political discrimination cases employ similar, though not identical, burden-shifting mechanisms as those used in other employment discrimination contexts.  Stephens, 122 F.3d at 176.  First, the plaintiff must make out a prima facie case.  Once the plaintiff has made this prima facie case, the employer may avoid liability by proving, by a preponderance of the evidence, that the same employment actions would have been taken even in the absence of the protected activity.  Stephens, 122 F.3d at 176.  Once the employer has articulated a nondiscriminatory reason for the employment action, the plaintiff may still prevail by discrediting that proffered reason, either circumstantially or directly, or by proving that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

    To establish a prima facie political patronage claim, a plaintiff must show that (1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision.  Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007).  Implicit in the third prong are two requirements: a plaintiff must produce evidence to

show that defendants had knowledge of his political affiliation in addition to demonstrating causation. Stephens, 122 F.3d at 177-180. "Proof of knowledge can come from direct or circumstantial evidence." Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 664 (3d Cir. 2002). To establish causation, a plaintiff must produce sufficient evidence from which a reasonable jury could conclude that her political affiliation was a substantial or motivating factor in her not being promoted. Galli, 490 F.3d at 276. Each decision is fact specific, based on the individual case. Zold v Mantua, 935 F.2d 633 (3d Cir. 1991).

    Plaintiff contends that because, as a non-resident of Haddon Township, she was apolitical and failed to support the winning ticket for Haddon Township Commission, she was terminated. The record shows that Plaintiff never spoke to the Mayor or either Commissioner. Powell Dep., p. 54, 64-65. In addition, there is no evidence that Defendants knew of Plaintiff's political views, and Plaintiff acknowledges that she was never asked to get involved in the 2007 election or political campaign. Powell Dep., p. 66-67. Nonetheless, Plaintiff contends that the Defendants must have known that she failed to show public support for the newly elected administration during or after the election campaign. Pl. Br., p. 9. In contrast, Plaintiff "heard" that Mr. Prince helped Mayor Teague with his campaign "a little bit." Powell Dep., p. 80. Faced with competent evidence that Defendants had no knowledge of Plaintiff's political views, or lack thereof, Plaintiff cannot rely on assumptions and conjectures to create a dispute.

    Barbara Prince did not support, assist, or financially contribute to Teague's campaign, nor did she attend fundraisers or put up signs. (Def. Br., Ex. E, Teague Aff.; Ex. F, B. Prince Aff.) Mr. Prince joined a group of other residents to put up political

signs for Teague's campaign, but did not otherwise participate in the campaign.  (Id.)  As discussed above, Defendants have put forth evidence that they eliminated Plaintiff's position as part of an overall reorganization to save the Township money in 2007 and 2008.  Defendants have further shown that they viewed the Public Works department as in need of greater accountability, and so they created the office manager position to deal with the abuses suffered by the department at the hands of its own employees.  To defeat summary judgment, a party cannot rely upon self-serving conclusions, unsupported by specific facts in record; even a non-moving party must point to concrete evidence in the record.  Celotex Corp., 477 U.S. at 322-23.  Plaintiff has not done so; instead, she states that many "reasonable inferences" could be made by a jury to find in her favor.  At this stage of the litigation, that is not sufficient.

## Conclusion

For these reasons, as well as those placed on the record during oral argument,

IT IS ORDERED on this 7th day of March, 2012 that Defendants' motion for summary judgment [26] is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion to strike [32] is hereby DENIED.

        /s/ Joseph H. Rodriguez  
JOSEPH H. RODRIGUEZ  
U.S.D.J.